IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAMERON MCCARY,            : | |
|     Plaintiff,            : | |
|                             : | |
| v.                          : | CIVIL ACTION NO. 25-CV-0626 |
|                             : | |
| CENTURION, LLC, *et al.*,   : | |
|     Defendants.          : | |

## MEMORANDUM

**YOUNGE, J.**                                                                 **MAY 27, 2025**

      Plaintiff Cameron McCary, a convicted prisoner currently incarcerated at SCI Phoenix, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, asserting violations of his rights arising from alleged indifference to his serious medical needs. Currently before the Court are McCary's Complaint ("Compl." (ECF No. 2)), his Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 1), and his Prisoner Trust Fund Account Statement.[1] (ECF No. 6.) McCary asserts claims against Centurion, LLC ("Centurion"), Centurion employees Ms. Opal and Ms. Culver, and Montgomery County. (Compl. at 4.) For the following reasons, the Court will grant McCary leave to proceed *in forma pauperis*, dismiss his claims against Montgomery County with prejudice and dismiss the remainder of his Complaint without prejudice for failure to state a claim.

---

[1] Also pending is McCary's Motion for Appointment of Counsel. (ECF No. 3.) McCary's request for appointment of counsel is premature at this stage of the litigation in light of the Court's dismissal of his Complaint for failure to state a claim. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (before exercising discretion to appoint counsel "the district court must consider as a threshold matter the merits of the plaintiff's claim"). The Court will therefore deny the Motion without prejudice to McCary's right to file a renewed motion for appointment of counsel in the future in accordance with the factors set forth by the United States Court of Appeals for the Third Circuit in *Tabron*.

**I.    FACTUAL ALLEGATIONS**[2]

The gravamen of McCary's claim is that he was not prescribed drugs to treat symptoms of ADD and/or ADHD, in violation of his constitutional rights.[3] The events giving rise to McCary's claims arose at SCI Phoenix. He alleges that on or about August 15, 2024, he began having trouble focusing, concentrating, and remembering. (Compl. at 5.) He sought care from a mental health provider, who informed him that Centurion, the private company under contract to provide mental health services at SCI Phoenix, does not provide drugs that target these symptoms of ADD or ADHD. (*Id*. at 5.) The provider prescribed the anti-depressant Effexor. (*Id*. at 6.) McCary, who alleges that he was already taking the anti-depressant Remeron, began taking Effexor the next day. (*Id*.)

Over the next five months, McCary noticed a drastic decline in his memory and in his ability to focus and concentrate. (*Id*.) On December 24, 2024, he requested another meeting with a mental health provider. (*Id*.) A staff member named Ms. Opal listened to his concerns but did not refer him to a provider and "hurried" him out of the office because of the upcoming holiday. (*Id*. at 7.) On January 2, 2025, McCary spoke to Ms. Duke, a treatment provider, who confirmed that Ms. Opal had not completed a referral for him. (*Id*.) McCary submitted another sick call slip the same day, because he was increasingly worried that he might be suffering from dementia. (*Id*. at 8.) He was seen by an unidentified doctor who allegedly ran no tests but

---

[2] The factual allegations set forth in this Memorandum are taken from McCary's Complaint (ECF No. 2). The Court adopts the pagination supplied by the CM/ECF docketing system. Where appropriate, grammar, spelling, and punctuation errors in McCary's pleading will be corrected for clarity.

[3] The Court understands these acronyms to refer to Attention Deficit Disorder and Attention Deficit Hyperactivity Disorder, respectively.

2

diagnosed McCary with pseudodementia.[4] (*Id*.) On January 3, 2025, McCary was seen by mental health provider Ms. Culver, who was unable to provide him with treatment because her computer was not functioning, and she could not access his chart. (*Id*. at 8-9.) She did opine, however, that it was likely that his symptoms arose from anxiety. McCary rejected this opinion, feeling that he was not experiencing anxiety at that time. (*Id*.) McCary claims that for five months, he did not receive any treatment for his serious medical needs. (*Id*. at 9.)

McCary alleges that Centurion has a policy of instructing its staff to not prescribe inmates displaying signs of ADD or ADHD with drugs such as Adderall which are targeted to the symptoms produced by those conditions. (*Id*.) He claims that this policy renders Centurion's treatment for these conditions inadequate and constitutes indifference to the needs of inmates with those conditions. (*Id*. at 10.) He claims that Ms. Opal and Ms. Culver, too, were indifferent to his serious medical needs, in that they were told about his symptoms, did not treat him "as outlined in their job description," and dismissed his concerns without scheduling follow-up visits or referring him to a different provider. (*Id*.)

McCary also seeks to assert a claim against Montgomery County pursuant to *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). He alleges that the county has received numerous complaints about medical malpractice and civil rights violations engaged in by Centurion as described in his Complaint. (*Id*. at 14.) He claims that the county's failure to

---

[4] "The term pseudodementia is used to describe the condition in which depression causes cognitive deficits that masquerade as dementia. Patients will often present with difficulties in memory and concentration and deny depressive symptoms. . . . A reasonable approach to patients with depressive symptoms and memory impairment in which even formal neuropsychological testing cannot differentiate depression alone from depression in Alzheimer's disease is to give a trial of antidepressant therapy for several months before repeating the neuropsychological testing." (*See* https://www.sciencedirect.com/topics/medicine-and-dentistry/pseudodementia, last accessed May 22, 2025)

intervene or discipline Centurion and its employees is evidence of the county's own policy of permitting civil rights violations to occur. (*Id.*)

McCary seeks a declaratory judgment,[5] a preliminary injunction,[6] and money damages. (*Id.* at 15.)

---

[5] Declaratory relief is unavailable to adjudicate past conduct, so McCary's request for this relief is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

[6] McCary does not describe the nature of the injunctive relief he seeks. Even if he had, preliminary injunctive relief is not available in the current posture of this case. Federal Rule of Civil Procedure 65 governs temporary restraining orders and preliminary injunctions. "The standards for a temporary restraining order are the same as those for a preliminary injunction." *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994). Preliminary injunctive relief "is not granted as a matter of right." *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982). Rather, a "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Fulton v. City of Philadelphia*, 922 F.3d 140, 152 (3d Cir. 2019). "The first two factors are prerequisites for a movant to prevail." *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999). In light of the Court's disposition of McCary's claims, he cannot establish that he is likely to succeed on the merits of this case, and his request for a preliminary injunction will be denied.

## II.     STANDARD OF REVIEW

The Court will grant McCary leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[7]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As McCary is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

McCary asserts claims based on alleged violations of his constitutional rights.  The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

---

[7] Because McCary is a prisoner, the Prison Litigation Reform Act requires that he pay the full filing fee in installments regardless of the outcome of this case.

5

the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).

### A. Claim Against Montgomery County

McCary purports to assert a *Monell* claim against Montgomery County based on its alleged policy or practice of allowing Centurion and its employees to provide inadequate care for inmates experiencing symptoms of ADD and ADHD. (Compl. at 14.) However, the conduct giving rise to McCary's claims occurred at SCI Phoenix, which, although located in Montgomery County, is a state correctional institution and an agency of the Commonwealth of Pennsylvania's Department of Corrections. (*See* https://www.pa.gov/agencies/cor/state-prisons/sci-phoenix.html, last accessed May 23, 2025.) McCary does not allege that Centurion, Ms. Opal, or Ms. Culver acted pursuant to any policy or practice implemented by Montgomery County. Additionally, McCary does not allege how Montgomery County is legally responsible for the actions of these Defendants, who are, respectively, a private company contracted to provide services to DOC inmates and two of its employees. In short, because McCary does not allege any basis for liability against Montgomery County, his claims will be dismissed with prejudice.

### B. Deliberate Indifference Claims

McCary asserts Eighth Amendment deliberate indifference claims against Ms. Opal and Ms. Culver. He alleges that on December 24, 2024, Ms. Opal listened to his concerns about his inability to focus or concentrate and his memory loss. (Compl. at 6-7.) As a staff member and

not a medical provider, Ms. Opal could only refer McCary to a provider but allegedly refused to do so and "hurried" McCary out of the office in light of the coming holiday. (*Id*. at 7.) As to Ms. Culver, McCary alleges that on January 3, 2025, she met with him and opined that his problems arose from anxiety, which McCary disputed. (*Id*. at 8.) She also advised McCary that, because her computer was not functioning, she could not pull up his chart. (Id. at 9.) She then dismissed McCary without offering any instruction or aid. (*Id*.) McCary asserts that both Defendants were aware of his serious medical needs, did not treat him as outlined in their job descriptions, and deliberately dismissed his concerns without scheduling referrals or follow-up. (*Id*. at 10.) McCary's claims, as pled, are not plausible.

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

Inadequate medical care rises to the Eighth Amendment level only when a plaintiff can show both a serious medical need and acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble,* 429 U.S. 97, 102, (1976). Not every complaint of inadequate prison medical care rises to the level of deliberate indifference. *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023) (*per curiam*). "Where a prisoner is receiving some amount of medical treatment, [courts] presume that the treatment is adequate absent evidence that it violates professional standards of care." *Id*. (affirming dismissal of deliberate indifference claims on screening) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990); *see also Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*) ("Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."); *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 45 (3d Cir. 2015) ("[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, 'federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'") (*per curiam*) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)).

McCary alleges that when he initially sought treatment for difficulty focusing, concentrating, and remembering, he was prescribed an anti-depressant that the provider thought might help with his symptoms. (Compl. at 6.) When he sought further treatment approximately four months later, Ms. Opal, a staff member who could only refer him for further care, allegedly did not do so based on his description of his concerns. (*Id*. at 7.) It is not clear from the Complaint whether Ms. Opal was aware of the treatment McCary was already receiving.

8

Approximately one week later, McCary was examined by a physician who diagnosed him with pseudodementia. (*Id*. at 8.) McCary does not state whether the physician changed his treatment plan at that time. The next day, McCary met with Mental Health Provider Ms. Culver, who attributed his symptoms to anxiety, a condition for which McCary was already receiving treatment. (*Id*. at 8, 6.) McCary disagreed with this diagnosis. (*Id*.) In short, McCary concedes that he was receiving treatment for anxiety, but that he disagreed with this diagnosis. He bases his claim on the Defendants' failure to treat him for ADD and/or ADHD but does not allege that he has been diagnosed with that condition. His claim, as pled, is based on the adequacy of the care he has been receiving, not on a denial of care. As such, he has not stated a plausible claim for deliberate indifference to his serious medical needs. *Davis v. Superintendent SCI Somerset*, 597 F. App'x. 42, 45 (2015) (*per curiam*). McCary's claims will be dismissed, however, he will be granted leave to amend this claim in the event he can allege facts that address he deficiencies identified herein.

      **C.**     **Claim Against Centurion, LLC**

McCary asserts a claim against Centurion based on an alleged policy of not treating inmates with ADD or ADHD with drugs specifically designed to address the symptoms of those conditions, such as Adderall. (Compl. at 9.) Centurion is a private company contracted to provide health services to inmates in the custody of the Department of Corrections. (*See* https://teamcenturion.com/, last accessed May 23, 2025.) A private corporation under contract to provide medical services at a jail or prison may be liable under § 1983 in certain circumstances. The United States Court of Appeals for the Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F.

App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (applying *Monell* to claims against medical contractor)).  Rather, in order to hold a private health care company like Centurion liable for a constitutional violation under § 1983, McCary must allege the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]."  *Natale*, 318 F.3d 575, 583-84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.") (citations and quotations omitted).

McCary's claim against Centurion is based on its alleged practice of refusing to prescribe Adderall or similar drugs to inmates with ADD or ADHD.  (Compl. at 9-10.)  McCary claims that this amounts to deliberate indifference to the serious medical needs of those inmates, in that Centurion knows that its current policy for treating them is ineffective.  (*Id*. at 10.)  However, McCary does not allege that he has been diagnosed with ADD or ADHD.  (*See* Compl.)  He alleges that when he was seen by a physician on January 2, 2025, he was diagnosed with pseudodementia.  (*Id*. at 8.)  He also alleges that prior to the onset of new symptoms in August 2024, he was being treated for anxiety, and that a health care provider explained to him that his symptoms (inability to focus and concentrate, difficulty with memory) could be attributable to anxiety and prescribed a second anti-anxiety medication – Effexor – at that time.  (Compl. at 5-6.)  Thus, to the extent Centurion maintains a policy with respect to its treatment of inmates with ADD or ADHD, it has not resulted in harm to McCary, who has not been diagnosed with either

of those conditions.[8]  *See Lugo v. Camden Cnty. Corr. Facility*, No. 06-2848, 2006 WL 1797830, at *2 (D.N.J. June 28, 2006) (refusal to consider inmate's self-diagnosis was not deliberate indifference).  As a result, his claim against Centurion is not plausible and must be dismissed. *See Visintine v. Zickefoose*, No. 11-4678, 2014 WL 4388609, at *6 (D.N.J. Sept. 5, 2014) ("Neither inconsistencies nor differences in medical diagnoses, or refusal to consider inmate's preferences can amount to cruel and unusual punishment.").  McCary will be granted leave to amend this claim if he can allege facts that will address the deficiency in this claim as described by the Court.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant McCary leave to proceed *in forma pauperis*, dismiss his claims against Montgomery County with prejudice, and dismiss the

---

[8] Even if McCary had alleged that he was diagnosed with ADD and/or ADHD, the fact that he was not prescribed Adderall to treat the symptoms of those conditions does not give rise to a constitutional claim.  "The Eighth Amendment does not give an inmate an unfettered right to the medication of his choice.  The fact that prison officials do not make amphetamine-based medications, like Adderall and Ritalin, available to prisoners does not suggest deliberate indifference where the prisoner was given an alternate treatment." *Sargent v. Coakley*, No. 13-1702, 2014 WL 201733, at *3 (N. D. Ohio Jan 16, 2014) (citing *Hudson v. McMillan*, 503 U.S. 1, 9 (1992)).  *See also Zoukis v. Wilson*, No. 14-1041, 2015 WL 4064682, at *8 (E.D. Va. July 2, 2015) ("Plaintiff's argument essentially consists of a disagreement with [federal] officials about his preferred method of ADHD treatment.  Such an argument does not implicate the Eighth Amendment.") (citation omitted); *Baylis v. Taylor*, 475 F. Supp. 2d 484, 486-87, 489 (D. Del. 2007) (holding that termination of prescription of Ritalin to treat attention deficit disorder because the facility did not recognize that disorder constituted a disagreement over proper treatment rather than deliberate indifference to a serious medical need).  Therefore, the mere disagreement between an unidentified physician and McCary regarding a prescription medication does not support a basis for relief.

remainder of his Complaint without prejudice.  McCary will be granted leave to file an amended complaint.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002).

    An appropriate Order follows.

                              **BY THE COURT:**

                              **/s/ John Milton Younge**
                              _____
                              **JOHN M. YOUNGE, J.**